United States District Court
Southern District of Texas
**ENTERED**
May 15, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SONIA GARCIA, Individually and as a representative of the Estate of Philip Garcia, Jr., and PHILIP GARCIA, SR., <br><br>Plaintiffs, <br><br>V. <br><br>CITY OF HOUSTON, TEXAS and WESLEY T. BLEVINS, Individually, <br><br>Defendants. | CIVIL ACTION NO. H-17-0117 |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred for all further pretrial proceedings is Defendant City of Houston's Motion for Summary Judgment (Document No. 48) and Defendant Wesley Blevins' Motion for Summary Judgment (Document No. 51). Having considered the motions, the responses and additional briefing, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant City of Houston's Motion for Summary Judgment (Document No. 48) and Defendant Wesley T. Blevins' Motion for Summary Judgment (Document No. 51) both be GRANTED.

### I. Background

This is a civil rights case brought by the surviving parents of Philip Garcia, Jr., who was shot and killed by an off-duty Houston Police Officer, Wesley T. Blevins, while he was working an off-duty security job at a Houston restaurant. Plaintiffs allege in their First Amended Original Complaint (Document No. 11) that:

> 7. January 16, 2015 Phillip Adam Garcia Jr. (sometimes hereinafter Phillip), 26, was with friends at Bombshells, a restaurant in Houston, Texas, after a Houston Rockets basketball game. Wesley T. Blevins (hereinafter sometimes Officer Blevins), a City of Houston police officer, was working off duty in uniform at Bombshells.
>
> 8. An argument started with a friend of Phillip's and a group of males. Eventually the argument involved Phillip.
>
> 9. Phillip, and several others, were commanded to leave Bombshells and did so.
>
> 10. Outside of Bombshells in the parking lot Phillip was in fear of his life and injury from some of the people who caused the argument. Phillip then retrieved a gun to protect himself from injury or death.
>
> 11. Suddenly, Officer Blevins emerged from Bombshells and shot Phillip three times, killing him. Phillip did not die immediately but suffered in great pain and fear of his impending death.
>
> 12. At the time he was shot and killed Phillip did not point a gun at Blevins or anyone else or threaten him in any manner.

First Amended Complaint (Document No. 11) at 2-3. Plaintiffs also allege that "The City of Houston has a variety of policies, practices, and procedures which individually or in concert caused the Constitutional rights [sic] complained of herein including but not limited to, failure to train, failure to discipline, failure to supervise, failure to fire or reassign officer, a pattern of improper police shootings and excessive force, a code of silence, and HPD investigating HPD to name a few." First Amended Complaint (Document No. 11) at 12. Plaintiff has alleged, as against both the City of Houston and Blevins, Fourth and Fourteenth Amendment excessive force claims under 42 U.S.C. § 1983.

Defendants City of Houston and Wesley Blevins seek summary judgment on Plaintiffs' claims, arguing that there is no summary judgment evidence of a municipal custom or policy upon which any municipal liability could be based under § 1983, and that there is no genuine issue of

material fact on Blevins' entitlement to qualified immunity.

## II. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that there exists no genuine issue of material fact. *Brandon v. Sage Corp.*, 808 F.3d 266, 269—70 (5th Cir. 2015) (citing *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986)). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Brandon*, 808 F.3d at 270 (quoting *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006)).

In considering a motion for summary judgment, all reasonable inferences to be drawn from

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S v. Int'l Marin Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).

3

both the evidence and undisputed facts are to be viewed in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). "If the record, viewed in the light most favorable to non-movant, could not lead a rational trier of fact to decide in non-movant's favor, summary judgment is appropriate." *Allen v. Radio One of Texas II, LLC*, 515 Fed. Appx 295, 299 (5th Cir. 2013) (citing *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Kelley*, 992 F.2d at 1413. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2513 (1986).

### III. Discussion

Section 1983 of Title 42 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress...." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989), *cert. denied*, 493 U.S.1019 (1990). To state a claim under § 1983, plaintiffs must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See Bass v. Parkwwod Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). "Because the Fourteenth Amendment protects liberty and property interests only against invasion by the state, a Section 1983 plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show

4

that state action caused his injury." *Id.*

Municipalities and other local governmental bodies are "persons" within the meaning of § 1983 that may be sued directly under 42 U.S.C. § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978); *see also Languirand v. Hayden*, 717 F.2d 220, 223 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984). In addition, a municipality may be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91; *see also Languirand*, 717 F.2d at 223.

> An "official policy" needed to establish municipal liability under § 1983 is defined as:
>
> a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson*, 958 F.2d at 94; *See also Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S. Ct. 3476 (1985). While policies that are themselves facially unconstitutional will support liability under § 1983, "facially innocuous" policies can also "support liability if [they were] promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d

5

567, 579 (5th Cir. 2001). In addition to identifying and offering proof of a municipal policy, a plaintiff must establish a "direct causal link between the municipal policy and the constitutional deprivation. *Monell* describes the high threshold of proof by stating that the policy must be the "'moving force' behind the violation." *Id.* at 580.

As for an individual's liability under § 1983, it is tempered by qualified immunity, an affirmative defense available to an individual public official. *Harlow v. Fitzgerald*, 457 US. 800, 818, 102 S.Ct. 2727, 2738 (1982). In general, qualified immunity is available for public employees and officers whose duties require the exercise of discretion. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987), and whose acts fall within the scope of their discretionary authority. *Brooks v. George County, Miss.*, 84 F.3d 157, 164 (5th Cir.), *cert denied*, 519 U.S. 948 (1996). "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Behrens v. Pelletier,* 516 U.S. 299, 305-06, 116 S.Ct. 834, 838 (1996). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Malley v. Briggs*, 457 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986)).

A dual analysis is applied to qualified immunity defenses. "The first question is whether the officer violated a constitutional right. The second question is whether the 'right at issue was "clearly established"' at the time of [the] alleged misconduct.'" *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The answer to the first question is determined by viewing the allegations and evidence in the light of the currently

applicable constitutional standards. *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993). The answer to the second question is determined by reference to the law as it existed at the time of the incident made the basis of the suit. *Id.* at 108. The plaintiff bears the burden to overcome a claim of qualified immunity, and that burden is "heavy," particularly as it relates to the showing that the right at issue was "clearly established." *Morrow*, 917 F.3d at 874. "A right is clearly established only if relevant precedent 'ha[s] placed the ... constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The City of Houston seeks summary judgment on Plaintiffs' § 1983 claims based on the absence of any summary judgment evidence of a policy or custom that was the "moving force" behind the alleged excessive force that caused Phillip Garcia, Jr.'s death. Blevins seeks summary judgment on Plaintiffs' § 1983 claims based on his assertion of qualified immunity. In response to the two Motions for Summary Judgment, Plaintiffs have submitted, as summary judgment evidence, the autopsy report on Phillip Garcia, Jr. (Document No. 57-1), an expert report from Plaintiffs' expert, Roger Clark (Document No. 57-2), an unidentified DVD (Document No. 57-3)[2], and the Declarations of the Plaintiffs (Document No. 57-4). Also in the record, as summary judgment evidence offered by Defendants, is the internal affairs report, which contains various witness statements.

Defendants object (Document Nos. 58 and 59) to the Court's consideration of Roger Clark's expert report on the basis that the report was not produced to Defendants in accordance with Rule 26, and on the basis that Clark's opinions are unreliable and irrelevant, are improper legal opinions,

---

[2] The DVD is not mentioned or described in Plaintiffs' response to Defendants' Motions and is referred to on the Exhibit 3 page (Document No. 57-3) as " A DVD HAND DELIVERED TO THE COURT."

and are not based on sufficient facts and data. Defendants also object to the Court's consideration of the DVD evidence on the basis that it was not produced to Defendants, and has not been authenticated.[3] Because the Magistrate Judge concludes, for the reasons set forth below, that neither Clark's expert report nor the DVD has any bearing on whether there is a genuine issue of material fact on either the Defendant City of Houston's municipal liability or Defendant Blevins' qualified immunity defense, Defendants' objections, which have not been responded to by Plaintiffs, are SUSTAINED, and neither the contents of Clark's (letter) report nor the DVD will be considered.

### A.     City of Houston

The City of Houston seeks summary judgment on Plaintiffs' § 1983 claim on the basis that there is no summary judgment evidence of a municipal policy or custom that was the "moving force" behind the alleged excessive force used by Defendant Blevins on the decedent, no summary judgment evidence that the City of Houston failed to train or discipline Defendant Blevins, and no summary judgment evidence that the City of Houston "ratified" Defendant Blevins' conduct and thereby created a policy or custom of disregarding excessive force. Plaintiffs, in response to the motion, argue that the City "maintains a policy of failing to discipline officers who use excessive force and of destroying or adulterating video to suppress public awareness of unconstitutional practices," and that the Phillip Garcia shooting was not an isolated unconstitutional action

---

[3] Defendants also object to evidence that was referenced or described in Plaintiffs' Response to the Motions for Summary Judgment but not included as exhibits. As set forth above, Plaintiffs submitted four exhibits in support of their Response to the Motion for Summary Judgment: only four exhibits were attached to Plaintiffs' response: the autopsy report (Document No. 57-1), Roger Clark's expert report (Document No. 57-2), a DVD (Document No. 57-3), and the Declarations of Plaintiffs (Document No. 57-4). Exhibits that may have been mentioned or referenced by Plaintiffs' in their response, but were not submitted and are not in the record, are not summary judgment evidence.

contemplated and rejected as a basis for municipal liability" and that "Plaintiffs have adduced evidence of multiple acts attributable to the City." Response (Document No. 57) at 16, 17.

Plaintiff's response to the City of Houston's Motion for Summary Judgment consists solely of argument for which there is no corresponding and supporting summary judgment evidence. In particular, there is no summary judgment evidence of a policy or custom that is causally connected to the alleged use of excessive force by Defendant Blevins, and no summary judgment evidence that any particular aspect of the City of Houston's training,[4] supervision[5] or discipline[6] of Defendant

---

[4] "To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. . . . In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'" *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005))." Here, there are no specific allegations and absolutely no summary judgment evidence about the existence or absence of any training program or procedure that led to, caused, or contributed to the alleged constitutional violation at issue in this case.

[5] "In order to survive summary judgment against a § 1983 claim for supervisory liability, a plaintiff is required to create a dispute of fact that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference." *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 397 (5th Cir. 2017), *as revised* (Mar. 31, 2017). Here, again, there is no summary judgment evidence that relates to any of these required elements of a failure to supervise claim.

[6] A failure to discipline claim against a municipality is actionable under § 1983 if there is evidence of a "City policy of inadequate officer discipline" that was created or pursued "with deliberate indifference toward the constitutional rights of citizens." *Piotrowski v. City of Houston*, 237 F.3d 567, 581–2 (5th Cir. 2001) Proof of such a policy may be based on "a purely formalistic investigation in which little evidence was taken, the file was bare, and the conclusions of the investigator were perfunctory. . . ." *Id.* Here, not only is there no summary judgment evidence supportive of a failure to discipline claim, the summary judgment in the record, including the internal affairs report, shows that a thorough investigation was undertaken by the City of Houston. *See* Document No. 50-1.

9

Blevins had any bearing on his conduct.[7] As for Plaintiffs' ratification claim, nothing in the record supports Plaintiffs' claims that the City "ratified" Defendant Blevins' conduct. The internal affairs investigation report does not contain any conclusions, but does state that the administrative case had been referred to the "district attorney's office for consideration of charges." Document No. 50-1 at 60. That referral cannot be viewed as the City of Houston's ratification,[8] or sanctioning, of

---

[7] Roger Clark, in the expert report Plaintiffs submitted with their response (Document No. 57-2), does not provide any factual basis or opinion about any specific City of Houston policy that led, or contributed to, Officer Blevins' use of deadly force. He does opine that "the existing HPD policy facilitated the unreasonable and excessive force that occurred and reflected a deliberate indifference to the life and safety of Mr. Garcia," that the Houston Police Department has a documented series of shootings and injuries of civilians when there was not a need to use deadly force and/or other unnecessary uses of force," and that "[a]fter [ ] the excessive force shootings and/or other uses of force, the HPD Internal Affairs Department and management – including the Chief of Police – does not retrain or discipline the officers. In my experience this leads to a confidence among officers that excessive force will not be punished but condoned leading to more examples of excessive force." (Document No. 57-2 at 11, 18). Because, however, Clark does not clearly identify any policy, practice or custom, and does not connect a clearly identified policy, practice or custom to the occurrence made the basis of this case, Clark's report, to the extent it and the opinions he sets forth therein are admissible, does not raise a genuine issue of material fact on the existence of any City of Houston policy that was the "moving force" behind the alleged constitutional violation at issue in this case. In addition, while Clark does identify and describe 20 incidents of excessive force by Houston Police officers against unarmed civilians (Document No. 57-2 at 12-17), those incidents occurred over a period of fourteen years (1998-2011), and are not sufficiently similar, either in facts or circumstances, to evidence a policy that could be attributed to the city of Houston for purposes of municipal liability in this case. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 852 (5th Cir. 2009) ("27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct").

[8] Although municipal liability under § 1983 may be premised on a municipality's ratification or approval of a subordinate's unconstitutional conduct, there must be, at the summary judgment stage, evidence that the "authorized policymakers approve[d] a subordinate's decision and the basis for it." *See Pinder v. Skero*, No. 4:16-CV-03479, 2019 WL 1301759, at *15 (S.D. Tex. Mar. 21, 2019) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Here, there is no such summary judgment evidence in the record.

Defendant Blevins' actions vis-a-vis the decedent. In all, because there is no summary judgment evidence in the record that supports Plaintiffs' § 1983 claim(s) against the City of Houston, summary judgment is warranted.

**B.     Blevins**

Blevins' entitlement to qualified immunity at the summary judgment stage is based on whether Blevins violated the decedent's Fourth Amendment right against unreasonable seizures and whether that right was "clearly established" at the time of the violation. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). As set forth above, determining whether Blevins violated the decedent's Fourth Amendment right is based on the state of the law as it currently exists; Determining whether the decedent's Fourth Amendment right was "clearly established" is based on the *fact specific* state of the law at the time of the incident at issue. *See Mullenix v. Luna*, ___ U.S. ___, 2016 S.Ct. 305, 310 (2015) (where Supreme Court precedents do not squarely govern the facts at issue, it cannot be said that officer acted unreasonably under the circumstances). While courts "have discretion to decide the order in which to engage" the two prongs of a defendant's qualified immunity defense, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 at 656.

To state a Fourth Amendment excessive force claim, a plaintiff "must demonstrate: '(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.'" *Romero v. City of Grapevine, Texas*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). Where, as here, the force used was deadly force, it is objectively unreasonable unless "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer

11

or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Here, taking all the summary judgment evidence in a light most favorable to Plaintiffs, the Magistrate Judge concludes that genuine issues of material fact exist on the first prong of the qualified immunity analysis – that is, whether Blevins violated the decedent's Fourth Amendment right against unreasonable seizures. Whether Blevins had probable cause to believe that the decedent posed a threat of serious physical harm to him or to others cannot be determined on this record. That is because the summary judgment evidence in the record conflicts on a material issue. What the uncontroverted summary judgment evidence does show is that there was an altercation between two groups of males at a restaurant in Houston. The decedent was involved in that altercation. The members of both groups were asked to leave the restaurant, which they did, and the altercation continued outside the restaurant. At some point, the restaurant's security officers, including Blevins, who was working there in an approved off-duty security position, were called to deal with the altercation. An unidentified female advised that there was someone in the parking lot with a gun. That person was the decedent. There is no dispute that he had a gun. There is also no dispute that Blevins ordered the decedent to drop the gun, and no dispute that Blevins, and only Blevins, shot the decedent. What *is* in dispute is whether the decedent posed a threat to Blevins, or anyone else. The fact that he had a gun is not, in and of itself, determinative. *See Graves v. Zachary*, 277 F.Appx 344. 348 (5th Cir. 2008) ("Merely having a gun in one's hand does not mean *per se* that one is dangerous."). That is particularly true in this case given: (1) the summary judgment evidence that Blevins, as well as several witnesses, observed the decedent trying to give the gun to someone else (Document No. 53-1 at 5, 10, 25-26); (2) the conflicting summary judgment evidence about whether the decedent ever pointed the gun at Blevins (or anyone else) (Document No. 53-1 at 5-6, 10, 22-24, 50, 53); (3) a witness' description of the

12

relatively short period of time between Blevins' orders to the decedent to drop the gun and Blevins' firing of his own weapon (described by a witness as a "3 Mississippi" count) (Document No. 53-1 at 5); and (4) the absence of any summary judgment evidence that the decedent verbally threatened Blevins or anyone else. This summary judgment evidence, taken in a light most favorable to Plaintiffs, raises a genuine issue of material fact on whether Blevins had probable cause to believe the decedent posed a threat of serious physical harm to him or to others. As such, it cannot be determined on this record whether Blevins' use of deadly force violated the decedent's Fourth Amendment right against unreasonable seizures.

While there is a genuine issue of material fact on the first prong of the qualified immunity analysis, qualified immunity is still available if it can be determined that the decedent's Fourth Amendment right was not *clearly* and sufficiently factually established at the time of the incident at issue. As the Supreme Court made clear in *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (internal citations omitted):

> The dispositive question is "whether the violative nature of particular conduct is clearly established." This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."

Three years later, that proposition was reiterated by the Supreme Court in *Kisela v. Highes*, 138 S.Ct. 1148, 1153 (2018) (internal citations omitted), in which the Supreme Court discussed, as follows, what is needed for a right to be clearly established, with the focus being on whether there is sufficient precedent to provide officers with "notice that a specific use of force is unlawful":

> "Of course, general statements of the law are not inherently incapable of giving fair

and clear warning to officers." But the general rules set forth in "*Garner* and *Graham* do not by themselves create clearly established law outside an 'obvious case.'" Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite and any reasonable official in the defendant's shoes would have understood that he was violating it." That is a necessary part of the qualified immunity standard . . .

In *Mullenix*, *Kisela*, and most recently in *Winzer v. Kaufman County*, 916 F.3d 464, 476-77 (5th Cir. 2019), the Fourth Amendment right at issue was determined not to be "clearly established." The Magistrate Judge concludes that a contrary determination cannot be made in this case.

In *Mullenix*, the Supreme Court was confronted with a qualified immunity defense following an officer's use of deadly force against a fleeing suspect. The suspect, Leija, fled in his car from officers who were attempting to arrest him on an outstanding warrant. A high speed chase ensued. During that chase, spike strips were set up, but an alternative plan was developed whereby Officer Mullenix would, if the spike strips did not work, attempt to shoot at Leija's car to disable it. "Approximately three minutes after Mullenix took up his shooting position, he spotted Leija's vehicle, with Rodriguez [another officer] in pursuit. As Leija approached the overpass, Mullenix fired six shots. Leija's car continued forward beneath the overpass, where it engaged the spike strip, hit the median, and rolled two and half times. It was later determined that Leija had been killed by Mullenix's shots, four of which struck his upper body." *Mullenix*, 136 S.Ct. at 307. In response to the § 1983 claims that were filed, Officer Mullenix asserted qualified immunity. The District Court denied Mullenix's motion for summary judgment on his qualified immunity defense, and the Fifth Circuit, affirmed that ruling, concluding that "the law was clearly established such that a reasonable officer would have known that the use of deadly force, absent a sufficiently substantial and

immediate threat, violated the Fourth Amendment." *Luna v. Mullenix*, 773 F.3d, 712 725 (5th Cir. 2014). The Supreme Court granted certiorari review and reversed the Fifth Circuit's decision that Mullenix was not entitled to qualified immunity, finding that "the constitutional rule applied by the Fifth Circuit was not 'beyond debate.'" *Mullenix*, 136 S.Ct at 312. In so doing, the Supreme Court noted that "none of our precedents 'squarely governs' the facts here" and that "[g]iven Leija's conduct, we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law, would have perceived a sufficient threat and acted as Mullenix did." *Id.* at 310.

In *Kisela*, the Supreme Court discussed qualified immunity by reference to the principles it had announced three years earlier in *Mullenix*. Deadly force was also at issue in *Kisela*, with the decedent having been shot by an officer after having failed, following two commands, to drop the knife she was carrying. The District Court granted the officer's motion for summary judgment on qualified immunity grounds and the Ninth Circuit reversed. Granting certiorari review, the Supreme Court reversed the Ninth Circuit's qualified immunity decision, finding that the officer's use of force did not violate clearly established law. In so doing, the Supreme Court made note of the context in which the deadly force was used:

> Kisela says he shot Hughes because, although the officers themselves were in no apparent danger, he believes she was a threat to Chadwick [another woman]. Kisela had mere seconds to assess the potential danger to Chadwick. He was confronted with a woman who has just been seen hacking a tree with a large kitchen knife and whose behavior was erratic enough to cause a concerned bystander to call 911 and then flag down Kisela and Garcia. Kisela was separated from Hughes and Chadwick by a chain-link fence; Hughes had moved to within a few feet of Chadwick; and she failed to acknowledge at least two commands to drop the knife. Those commands were loud enough that Chadwick, who was standing next to Hughes, heard them.

*Id.* at 1153. Based on that factual background, the Supreme Court determined that "[t]his is far from an obvious case in which any competent officer would have known that shooting Hughes to protect

Chadwick would violate the Fourth Amendment." *Id.*

Following both *Mullenix* and *Kisela*, the Fifth Circuit decided the qualified immunity issue presented in *Winzer v. Kaufman County*, 916 F.3d 464 (5th Cir. 2019) just months ago. In *Winzer*, "911 dispatchers received multiple calls of a man standing in a rural street shooting a pistol." *Id.* at 467. That man, described by the dispatcher as a "black male wearing blue jeans and a brown shirt," fired shots at two officers, and then "disappeared in the trees." Officers set up a "defensive position secured by three vehicles," and "began giving verbal commands for the suspect to drop his weapon and 'come out.'" *Id.* at 468. "'After a few minutes,' the officers spotted a figure on a bicycle enter the road. The rider was wearing a blue jacket instead of the brown shirt the suspect had been wearing, and was over 100 yards away." *Id.* While some of what happened next is disputed, "it is beyond dispute that an officer yelled [to the person on the bicycle] 'put that down!' The officers then fired within six seconds of spotting [the decedent] on his bike," four of seventeen shots striking the decedent, who died at the scene. *Id.* at 468-69. "As it turned out, the person on the bicycle was Gabriel Winzer, and not the suspect who had fired at [officers]." *Id.* at 468. In addressing the District Court's grant of summary judgment to one of the defendants (Officer Hinds) on qualified immunity grounds, the Fifth Circuit first determined that the summary judgment evidence in the record raised a genuine issue of material fact on the first prong of the officer's qualified immunity defense: "whether an objectively reasonable officer would have believed that Gabriel posed an imminent threat and whether [the officer's] use of force was constitutional." *Id.* at 476. The Fifth Circuit then determined, by reference to the Supreme Court's decision in *Mullenix*, that "we cannot conclude that Gabriel's right to be free from excessive force was clearly established here." *Id.* at 477.

The three aforementioned cases, two from the Supreme Court and one from the Fifth Circuit,

convince the undersigned, on these facts – both those that are uncontroverted and those that are in conflict – that the Fourth Amendment right at issue, and Blevins' alleged violation of it, was not clearly established on the date of the incident made the basis of this suit. In particular, there is no clear and controlling case law, from either the Supreme Court or the Fifth Circuit, that would have put Blevins on notice that his use of deadly force, when confronted with a suspect with a gun who did not drop the gun when told to, was a clear, and undisputed violation of the decedent's Fourth Amendment right(s). Because those facts – that the decedent had a gun, that the decedent did not drop the gun despite being told to by Blevins, and that the decedent knew he was being confronted by a police officer who was in a position to use deadly force – are not controverted, Plaintiffs cannot show that any competent officer would have known that the use of deadly force was a clear and obvious violation of the Fourth Amendment.[9] Defendant Blevins is therefore entitled to summary judgment on his qualified immunity defense, and the dismissal of Plaintiffs' § 1983 claim(s).

---

[9] The ongoing consideration of qualified immunity in *Cole v. Carson*, 905 F.3d 334 (5th Cir. 2018), further convinces the undersigned that the Fourth Amendment rights at issue in this case are *decidedly unclear*. In *Cole v. Hunter*, Civil Action No. 3:13-cv-02719-O, 2014 WL 266501 (N.D. Tex. Jan. 24, 2014), the District Court determined, in the content of a motion to dismiss for failure to state a claim, that the officer defendants were not entitled to qualified immunity. On appeal, the Fifth Circuit Court of Appeals agreed and affirmed the District Court's qualified immunity decision. *Cole v. Carson*, 802 F.3d 752, 762 (5th Cir. 2015) ("Under the Coles' version of the facts, it was objectively unreasonable under clearly established law to shoot Ryan"). The Supreme Court granted certiorari, and on November 28, 2016, remanded the case to the Fifth Circuit for further consideration in light of *Mullenix*. *Hunter v. Cole*, 137 S.Ct. 497 (2016). On September 25, 2018, upon remand, a panel of the Fifth Circuit concluded, again, that genuine issues of material fact precluded summary judgment on both prongs of the officers' qualified immunity defense. *Cole v. Carson*, 905 F.3d 334 (5th Cir. 2018). The Fifth Circuit has since agreed to rehear the case en banc. *Cole v. Carson*, 915 F.3d 378 (5th Cir. Feb. 8, 2019) (granting petition for reh'g en banc).

## IV. Conclusion and Recommendation

Based on the foregoing and the conclusion that there is no summary judgment evidence that would support any municipal liability, and that the Fourth Amendment right at issue was not clearly established on the date of the incident made the basis of this case, the Magistrate Judge

RECOMMENDS that Defendant City of Houston's Motion for Summary Judgment (Document No. 48) and Defendant Blevins' Motion for Summary Judgment (Document No. 51) both be GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 14th day of May, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE